Mr. Friel, you may proceed, sir. Thank you, and good morning. Tom Friel for Serviceview Technologies. We're here because the district court made fundamental errors in reaching its decision on Section 101. In Step 1, the court rejected consideration of technological improvements over conventional locates as irrelevant. He cited a single case, a district court case, that was later overturned. Second error is that, in Step 1, the district court failed to consider the claims as a whole in deciding what the claims are directed to. Instead, he distilled the claims to their simplest form. In the red brief, that's 40 and 41, they quote statements made by Serviceview during the district court proceedings that are the essential claim constructions you're arguing for before this court. Why don't those quotes directly contradict your position? And similarly, why don't your slides that were presented to the district court during your claim construction tutorial also not directly contradict your claim constructions before us today? The claim constructions that were advocated in the district court were plain and ordinary meaning. There is no basis for the court's finding and equating geographical coordinates of a two to four inch paint mark on the ground with the address of the location. That is not a position that we advocated for. I don't believe anyone advocated for. That is clearly, with that construction, that's clearly fair game. The same is true with the other two constructions that are essential. What we have is a later decision by the district court refining the constructions in some cases and others contradicting them. They have become law of the case. They've become something that we was not appealed from and they are constructions that I think we're all bound by. They've not been challenged by SNN and we have many cases that hold that claims are not noses waxed and be distorted depending on the purpose. So whether we're talking about infringement or invalidity, inequitable conduct, the claims have to mean the same thing. The latest most complete word from the court on what the claims mean are the three essential limitations as the court said were required to use that language repeatedly in the trial order and I think that's what we have to follow and that's what we have to apply and that shows in fact why the constructions in the 101 phase were wrong. I could go on on that but I think that encapsulates it. So you're saying there's some kind of technological improvement here and I guess the question in my mind is why can't the claim be understood as performing a pre-existing abstract process using a in the same way that you know for example Alice Supreme Court found that okay there's some super powerful computer in that claim that's going to be handling the intermediated settlement of a lot of currency exchange transactions throughout the day and making sure that they're done securely. Why isn't this your claim similar in the sense that yes there's a computer involved you know for receiving data manipulating the data to create a final end product that describes and depicts a locate operation but in the end it's just merely using conventional technology as a tool to carry out the abstract process? I think this case is far more like the Thales case recently decided in that we have conventional elements but they're put together in a new way. What the court did here is failed to it took each element individually and said it's conventional. The court failed to consider the unique combination of the elements and that is the fundamental part of the invention. Now you ask you say well aren't isn't this all in the art before and the we know that the closest prior art was the hand art at least to take the judge's view in 101 we don't believe that was the case but the the that art did not include the steps that are part of the claims so you have to look at the new steps and say these weren't included in the prior art therefore it's not just a computerization of it. The next observation I would make is the closest prior art which was advocated by SNN and accepted by the court and the trial findings was computerized prior art. Computerized locate prior art and the court found that on examination the claims in question were patently distinct from that closest prior art. In other words they didn't just take a general computer and and take what was in the art before and change it. The court said no the certis view art is different it is an improvement at least in three key ways. The first was the ability to actually locate with the geographical coordinates the paint marks that are on the ground the two to four inch marks there's absolutely no evidence that that was part anything in the prior art. Okay so let's assume for the moment that your inventor was the first one to decide to include geographic coordinates in the locate operation document and that's but it was already conventional to include all kinds of descriptive information about the locate operation and now you've included another type of descriptive information. So I guess we're talking about latitude and longitude coordinates I assume. In other types of coordinates done long before the invention of the GPS. I guess what I'm saying is you know we already knew the idea of including a property address and the name of the locate technician and the date and other supplemental information to describe the locate operation and now there's an additional piece of information. The latitude and longitude coordinates you're adding to that final document. I guess I wonder why is an extra type of information that's in the same category as describing locate operation create an inventive concept? Well the trial court has found that that is an inventive concept that that is novel over the closest prior art so I think we have that as a given. I don't want to go so far as to say the trial court found it was an inventive concept then you would have cleared step two of the Alice two-step framework. Where does he say that? Where does the trial court say this is an inventive concept? Well that's a good question. I can't. I may be over characterizing. I accept that but the court found that the claims were not invalid under 103 or 102 over the prior art. They are different. But all that means is the prior art doesn't have this stuff in it. But if the prior art is completely invalid too, the fact that you add more invalid pieces doesn't make yours patent eligible. But it shows that there are additional steps that were not in the prior art so we're not merely computerizing what was before. So the answer... But if there's still ineligible steps, if they're still just adding more types of information and adding information to a map is ineligible then the fact that it's different from the prior art seems to be not a very helpful point for you to be making. Well the the court completely ignored the fact that these were technological improvements over the prior art, refused to credit them and the reason that... I mean I know you want to say it's a technological improvement. I understand that much but let's drill down a little bit more. What is the technological improvement in the claim? What... Let's look at the claim and I think that would be helpful. Highlight for me the technological improvement. So let's look at the 359 patent for example, claim one. I'm at appendix 281. So what we have to look at all of the limitations that are added and not just one such as geographical coordinates but the technical improvements to the prior art are adding a displayed aerial image, adding at least one digital representation of one physical locate mark. In other words the two to four inch paint mark on the ground. That had not been done before. That we contend is an innovation included. What do you mean it hadn't been done before? There had no one had taken in a prior art, in a hand-drawn art, and there's no finding from anyone, that anyone had taken and found a means to locate a two to four inch paint mark which is important for liability and other purposes to document the... What inch mark? So what we are recording on the ground are, and you can see it on the brief, on the blue brief there is a picture... Could you locate that two to four inch paint mark looking at the hand-drawn map by simply seeing where the lines drawn and going over and looking for a two to four inch paint mark? Well that's a cartoon essentially and it doesn't allow you the end of the invention. The improvement is to be able to recreate the locate after the marks have been destroyed, after they've been dug up, or after a gas explosion. So the entire innovation here is to be able to effectively recreate where the marks were placed. Would a photograph do the same thing? A photograph would not do the same thing. And the reason is that it is a question of angle of perspective and many difficulties with that. There's no geo-encoding, there's no way to find the coordinates of the paint marks themselves from a photo. It's not clear to me that that's in this claim. This claim is just talking about an aerial image. Well it starts with, it says adding to an aerial image at least one digital representation of a of at least one physical locate mark. That's a paint mark. Couldn't that include, I climb up a tree with my phone and take a photo of the locate operation area and that would be an aerial image? Well I'm not sure what an aerial image is, but allowing that for a minute, sure that would be an aerial photo of the marks on the ground. That it was from the air. Right, but we don't want to miss the other limitations. That's exactly the problem with the judges 101 decision. He did not take the claims as a whole in isolation. He looked at each one and he didn't look at the net effect. How do you not take them, I mean we have to talk about them in language so we have to talk about them separately. So we're going to go through each of them and we're going to say does this have any eligibility or does it add any eligibility? Right. If they're all just adding information to a map and we start from the premise that putting information on a map is not an eligible idea, it doesn't matter how many of them you put together or how many different steps or how you combine them, it's all just putting information on a map. It's new information so in fails it was just taking information. It could be the newest information in the world, but putting information on a map is not an eligible concept. I don't see how under any of our precedent, under any of the Supreme Court precedent, that's at all eligible. I mean you could add the local bar on this map because after they finish all their work they want to go get a beer. That's new information. I bet nobody's ever put that kind of information on a map, but that can't make it in patent eligible concept can it? I would agree with your honor, but this is not just information on a map. That is the characterization that I was talking about, having a searchable file within for the information, that's very important. That's not putting information on a map. Good morning, your honors. I'm Dan O'Connor with Baker McKenzie and I'm here for S&N, the Eppley. First I'd like to comment on a couple of points that came up in your argument thus far on the topic of geographic coordinates and how this relates to what had been done before. We know what had been done before is that it was done by hand. The best statement of that is in the specification of all the patents, I believe, and the specification states as follows. The question is, you know, if we accept that what has been invented here is the generation of a better locate operation record, a more precise one, a more accurate one, than never been done before, using digital photo technology and GPS, then why isn't that an application of pre-existing technology for a new good use? Well, I think it's applying computer technology. Generic computers, generic software, generic hardware. The specification makes clear. You can use any kind of software and hardware to do these and there's no non-generic ordering or relationship between the hardware components here. It's using generic hardware and software to document a locate operation, something that had always been done by hand. But let's just accept that this is a better product of depicting a locate operation and also giving extremely precise and accurate data as to the location of the locate operation in a way that definitely wasn't done before. Everything else was maybe more done by hand and by eye and now we have something that is as scientifically precise as you could possibly get it, thanks to these geographic coordinates, thanks to the markup of a digital photo. Why can't we look at the process? Yes, perhaps each independent piece of technology is pre-existing and conventional, but now they've been put together in a way that creates this better result in doing these records. Well, because you can do something, you might be able to do something more precisely with a computer than you can do it by hand. It doesn't make it patentable. Because you can search better a computer, it doesn't make it patentable. These patents are essentially about electronic record-keeping. The record is what happened in a locate operation, where the marks were placed, who did it, the data was done, this kind of detail. It was all done by hand heretofore and they could have been as precise as they wanted to be the locate operator. He could have entered the GPS coordinates, he could have entered the longitudinal latitude if he wanted to, you could do that. The testimony here as to how they came up with this invention is the CEO of their company was doing a run and he was wearing a Garmin watch and he realized that the Garmin watch was tracking his longitudinal latitude as he ran along. He thought, well we can use that to document locate operations, to more precisely note where the paint marks are on the ground. They didn't invent that. That's not patentable. Alice made the point that electronic record-keeping is one of the most basic functions of computers and that's at 134 Supreme Court at 2539. Electronic record-keeping, that's what these patents are about. They don't improve the performance of a computer. They don't require any at all special hardware or software. The statements about, the open-ended statements in the specification about, first of all the claims don't say anything about how to perform these methods or how to in generic references to hardware and software. There's, for example, electronically receiving, electronically transmitting, a communications interface, a display device, a processing unit, electronically receiving, combining the electronically received image with image-related information, displaying on a display device at least one digital image. This is as generic as it gets. In the specification, they emphasized that they're not limited to any hardware or software or any arrangement of hardware and software. Here are some statements. The communication, this is about some hardware, the communication interface 370 may include any transceiver-like mechanism that enables user device 210 to communicate with other devices or the 204 patent, appendix 233. It's also found in the 359 patent, that same language, and appendix 275. It's found in the 344 patent at 298, appendix 298, and it's found in the 341 patent at 236, appendix 236. Another statement about the memory components. Memory 330 may include a random access memory, a RAM, a read-only memory, a ROM, a memory card, a magnetic and or optical. We understand all of that. I mean, why don't you just focus on the idea that these people came up with taking a digital aerial photo and then a GPS? Well, the precision of the geographic coordinates and how that relates to patentability was before the district court, and it is discussed in the ruling that's on appeal, and this is what Judge Davis said on that very point. He's talking about, this is appendix 76. Although geographic coordinates corresponding to the physical locate marks might differ in detail from a sketch identifying the approximate location of the locate marks, such information does not differ in kind. And that doesn't constitute an inventive concept. It's not transformation. And it might not differ if you take a very careful reading of where you are and you draw a map to scale. The locate operators were on the scene. They're sophisticated workmen. They could have precisely recorded where they made the marks. They could have taken a picture, and they did take pictures of what they did. How is that not a record? And all these people have done is that they're attempting to patent doing this electronically with a computer, making an electronic record of what had been done by paper heretofore. Now, you know, the specification says it will be, and this is in all five patents, it will be apparent that aspects as described above may be implemented in many different forms of software, firmware, and hardware in the implementations illustrated in the figures. The actual software code or specialized control hardware used to implement these aspects is not limiting of the descriptions provided herein. Thus, the operation and behavior of the aspects were described without reference to the specific software code. It being hardware that will do this, you can write software that will do this, and what they're saying is, we own it. If you do that, that's preemption. That's the definition of preemption. They're preempting somebody making an electronic record of a locate operation. That's what they're trying to do. Now, they're saying, well, we'll be more precise. A locate operator can be very precise in the field, and being more precise doesn't make it patentable. Being more precise as you can with conventional known tools doesn't make it patentable. And that's what they've done here. That's what was found below. What they're trying to do now on appeal is claim that the inequitable conduct trial produced evidence and purported claim constructions, which they think calls for a different look on equitable conduct, I mean, on patentability. And, you know, first of all, they went back to the district court after the inequitable conduct trial, and they filed a motion reconsideration, and they said, we think that the evidence from the inequitable conduct trial, all extrinsic, of course, should result in a different answer on patentability. And the court said, absolutely not. We don't find anything that none of the evidence at the inequitable conduct trial changes the result on patentability. The court said as follows, and this is at Appendix 120, certis view has not demonstrated that reconsideration is warranted on the grounds that the subsequent bench trial in this case produced evidence that was substantially different from the evidence available at the time the court resolved Essendon's motion for judgment of pleadings. So the arguments they're making here about what happened at the inequitable conduct trial and the evidence there should change the result, that was presented to Judge Davis, the judge who heard all that evidence and made this decision. He said it does not. And their arguments about new claim constructions in this court, pardon me, in the trial order are just unsupported. I call attention in the record to page 33 of their brief. They talk about three essential claim limitations. One that are now required in the claims. The first being a high-resolution manifest constructed from high-resolution base image. And they say this is required by all the claims. First of all, it's not recited anywhere. It's not recited in any claim. And the judge never said it was required. Here's what they say. The district court found that all appeal claims recite a high-resolution manifest constructed from a high-resolution base image. Their cite for that, they got a long string of cite. The first cite is an accurate cite. It quotes the court as follows, as saying this, generally input images may be of sufficient resolution at an optimal elevation to be useful as a record to locate operation. So all the judge said is the resolution you need is what's sufficient to be a good record. They do quote that and then they go on to, but they say that that supports the proposition that high-resolution is what's required. It's just not supported. All the rest of the cites in the string cite here in the bottom of 33 and almost all of 34 are citations to trial evidence to expert witnesses talking, you know, all extrinsic. And again, we know that the 101 analysis is claim-centric. It starts with claims. But this notion that they put forth about all the claims require high-resolution images, a high-resolution manifest, and the court has found this, it's just a myth. It's not in the record. Does it make any difference anyway? I take up that. I mean, if it did, even if the court did say that. If it said a high-resolution aerial image, I mean, these claims aren't about the camera or the device that creates the image. It's about using that technology to collect, record, and electronically store that information. Right. Even if they're wrong when they say the court reconstrued the claims in this. It's not supported in the record at all. But even if they were right, even if the court, even if this court wanted to or was of a mind to read in the publications that they now argue, it still wouldn't change the result. The difference between a high-resolution manifest and a manifest with sufficient resolution, that's not an inventive concept. They didn't invent high-resolution anything. On the searchability of the record, they're now arguing that what the court said is, based on what the court said at the trial order, that the searchability must be, you must be able to search to look for, in the electronic record, search by where is the locate mark located. So you can envision an electronic document with fields, and there might be a field for the location of the locate marks. They say you have to be able, the searchability of the record must be that precise. Now the claims don't say anything about that. The judge didn't say that's necessary. And at the trial level, they argue searchable electronic record should be given its plain and ordinary meaning. Now they're arguing for very specific meaning. But even if they got that meaning, even if this court said okay I'll give you that precise meaning, that doesn't make it patentable. They didn't invent the ability of that. And the same is true for geographic coordinates. Even if they got their definition on that, that wouldn't make it patentable. Thank you very much, John. The invention is not a map in a GPS. It's an electronic manifest that allows different functionality than a map. It allows a recreation of a locate. A map can't do that. It allows higher precision of the kind of innovation that fails recognize what could be inventive. It's an improvement over the prior art that's clear from the trial record and the evidence they're in. And this is not... Why can't a map allow a recreation of a locate? I don't know of a map that can do that. I've been trying to determine where a minefield was laid and I have the grid coordinates. I can't start with those grid coordinates and terrain features and determine exactly where it is? Well that's a map of an underground facility. This is an electronic manifest of a locate operation done for different purposes and it has an inventive concept in doing that before these marks are not put to scale. They were not put in a way that you could reproduce them and recreate them. They weren't searchable electronic records. They weren't aerial images. They weren't adding digital representations. All the things in the claims. And it would be oversimplifying them to call them an electronic map plus a GPS. And there are many cases from the court where technological improvements over the conventional art were made and the result is under step one patent-eligible McRow and FishDDR. There are eight of them. Thank you. Thank you very much. These matters will stand submitted. Thank you.